# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| William Mustafa, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 C 7916 |
| | ) | |
| v. | ) | Hon. Judge John Z. Lee |
| | ) | |
| State of Illinois Property Tax Appeal Board, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Mustafa ("Mustafa") has sued his former employer, the State of Illinois Property Tax Appeal Board ("PTAB"), pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"). Mustafa claims that PTAB discriminated against him based upon his race and religion, and then retaliated against him when it became aware he had filed a charge of discrimination. For its part, PTAB contends that Mustafa's performance was never satisfactory during the time he worked there, that PTAB's concerns about his performance were communicated to him long before he filed his charge of discrimination, and that his subsequent termination was causally related to and entirely consistent with these prior issues. After the conclusion of discovery, PTAB moved for summary judgment as to all claims. For the reasons set forth herein, PTAB's motion is granted, and judgment is entered in its favor.

## Local Rule 56.1

Motions for summary judgment in the Northern District of Illinois are governed by Local Rule 56.1. "The obligation set forth in Local Rule 56.1 'is not a mere formality.' Rather, '[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary

judgment to identify specific facts that establish a genuine issue for trial.'" *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted) (quoting *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 924 (7th Cir. 1994)). The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 537 (7th Cir. 2011) (quotation omitted).

Local Rule 56.1(b)(3)(B) requires the nonmovant to file a "concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *See* Local Rule 56.1(b)(3)(B). Local Rule 56.1(b)(3)(C) also "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement . . . of any additional facts that require the denial of summary judgment.'" *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005) (quoting Local Rule 56.1).

The failure of a nonmoving party to abide by the rule's requirements carries significant consequences. "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3); *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). "This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire." *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000). This rule applies with equal force even where a plaintiff is proceeding *pro se*. *See Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011)

("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules.").

PTAB argues that Mustafa has frequently failed to comply with Local Rule 56.1 in his response to the summary judgment motion. While the Court declines to strike Mustafa's Local Rule 56.1 statement or response in its entirety, where he fails to comply with the rule, the Court will disregard the statement of fact or denial as appropriate.

## **Factual Background**[1]

Mustafa is an African-American male and a religious Muslim. Def.'s L.R. 56.1(a)(3) Stmt. ("Def.'s LR 56.1 Stmt.") ¶ 2. In February 2011, PTAB hired Mustafa to work in its Des Plaines office as an Appraisal Specialist III (Administrative Law Judge) on a probationary basis. *Id*. ¶¶ 2-4. Appraisal Specialists such as Mustafa are expected to conduct hearings and draft decisions involving complex property tax assessments for residential, commercial, and industrial properties, with minimal training and minimal supervision. *Id.* ¶ 6. Therefore, when hired, Appraisal Specialist IIIs are expected to have thorough knowledge of the laws and principles relevant to real estate appraisal and assessment, and to be capable of presenting written analyses of these issues. *Id.* ¶ 8. Under the terms of a collective bargaining agreement with the State of Illinois, a probationary employee's original six-month probation period may, but need not, be extended for six additional months to allow the employee additional time to demonstrate an ability to successfully perform the duties and responsibilities required of the position.[2] *Id*. ¶ 5.

---

[1] The following facts are taken from PTAB's Local Rule 56.1(a)(3) Statement of Material Facts, and are undisputed unless otherwise noted.

[2] While Mustafa disputes numerous propositions in set forth in Def.'s L.R. 56.1(a)(3) Stmt., in many cases he fails to "cite specific evidentiary materials justifying the denial," as required by Local Rule 56.1. *Malec*, 191 F.R.D. at 584. Therefore, ¶¶ 5, 8, 20-23, 25, 28-29, 31-32, 43-44, 45-46, 49-53, 56-59, 60-61, & 65 of Def.'s L.R. 56.1(a)(3) Stmt. are considered to be undisputed.

New Appraisal Specialist III hires are trained to process appeals by senior, experienced staff who review their work and provide feedback. *Id.* ¶ 9. To assist Mustafa in acclimating to PTAB and to acquaint him with the appeal process, senior staff members Katherine Patti ("Patti") and Jennifer Vesley ("Vesley") were assigned to review the agency rules and the Property Tax Code with him and to provide him with simple, uncontested residential appeals for his first draft decisions. *Id.* ¶¶ 10, 13. Patti and Vesley, both licensed attorneys, were expected to review Mustafa's work and provide feedback regarding his draft opinions. *Id.* ¶¶ 11, 13. Robert DaPrato ("DaPrato"), another Appraisal Specialist III, also was assigned to assist Mustafa. *Id.* ¶ 12. PTAB authorized additional off-site training for Mustafa on numerous occasions, and Mustafa does not dispute that he attended these sessions. *Id*. ¶¶ 15-16. Between his hiring date and August 15, 2011, the day before he filed his charge of discrimination, Mustafa never requested any additional training from anyone at PTAB. *Id*. ¶ 17. Mustafa also admits that PTAB never denied him training opportunities because he is African-American or because he is Muslim. *Id*. ¶ 18.

While working at PTAB, Mustafa's duties consisted primarily of reviewing non-complex residential appeals and preparing draft orders. *Id*. ¶ 19. On several occasions prior to August 15, 2011, Mustafa received negative feedback from senior staff concerning his job performance, including criticism about his writing skills and the manner in which he developed cases. *Id*. ¶¶ 20-22. Moreover, senior PTAB staff members observed that Mustafa became argumentative and uncooperative when receiving constructive criticism and inappropriately aggressive when given instruction with which he did not agree. *Id*. ¶ 23.

A few months into his probationary period at PTAB, in approximately June 2011, Louis Apostol ("Apostol"), the Executive Director of PTAB, told Mustafa that his office was being

4

moved next door to Apostol's office. *Id*. ¶¶ 72, 75. Later that month, Apostol emailed Mustafa asking him to "keep the noise levels down," because Apostol could hear his conversations through the wall and found it distracting. *Id*. ¶¶ 76-77. Apostol had previously asked at least one other staff member to keep the noise level down in the office because he found it distracting. *Id*. ¶ 78. Soon thereafter, in July 2011, Apostol asked Mustafa to keep his door to the hallway closed at all times. *Id*. ¶ 79. However, no one at PTAB ever told Mustafa that his office was being moved because he is African-American or because he is Muslim, nor did anyone at PTAB ever tell him that he was asked to keep the noise down or his hallway door closed because he is African-American or because he is Muslim. *Id*. ¶ 80.

In July 2011, a supervisor sent Mustafa an email informing him that his output of 41 opinions was "an improvement over" the prior month's total but was "still low for most hearing officers," and Mustafa "was reminded that he was required to be at work during his scheduled work hours." *Id*. ¶ 24 and Pl's Resp. thereto. Around that same time, two female PTAB employees complained that Mustafa was conducting himself in an inappropriate manner for a business environment, and one of those employees asked not to work with Mustafa because he made her uncomfortable. *Id*. ¶ 25. Prior to August 15, 2011, both Apostol and PTAB's Chief Hearing Officer, Steven Waggoner ("Waggoner"), were aware of these issues with Mustafa's performance and conduct. *Id*. ¶ 26.

Around the same time, PTAB discovered that Mustafa had held two prior positions with the State of Illinois in Sangamon County, Illinois, but had failed to disclose this information when applying to work at PTAB.[3] *Id*. ¶ 27. PTAB observed that the time frame during which

---

[3] Mustafa denies that he was required to disclose prior positions with the State of Illinois, but this contention is unsupported by the record. Sec Reply Supp. Def.'s LR 56.1(a)(3) ¶ 27. Therefore, this paragraph is considered to be undisputed. *See Malec*, 191 F.R.D. at 584.

5

Mustafa held these positions was inconsistent with the resume he attached to his employment application, which indicated he was employed by NationsBank in Chicago, Illinois during the same time. *Id*. ¶ 28. On or about August 11, 2011, Mustafa received written notice that PTAB had discovered discrepancies with respect to his resume, employment application, and other records maintained by the State of Illinois. *Id.* ¶ 29.

On or about August 15, 2011, Mustafa received an email notifying him that his probationary period was being extended for an additional three months so that PTAB could "sort out questions regarding [his] previous work record with the State of Illinois and other issues." *Id*. ¶ 30. The "other issues" concerned Mustafa's job performance and the need for a formal assessment, as well as PTAB's interest in seeing whether, given additional time, Mustafa could demonstrate the ability to perform at the level expected of an Appraisal Specialist III. *Id*. ¶ 31. PTAB subsequently discovered additional material discrepancies between the representations made by Mustafa on his employment application and other publicly available information. *Id*. ¶ 32. Furthermore, the employment application completed and signed by Mustafa certified that "the information on this application is true and accurate," and that he understood that "misrepresentation of any material fact may be grounds for ineligibility or termination of employment." *Id*. ¶ 33.

At the time that Mustafa's probation period was extended, Apostol spoke with a union representative, who did not object to extension of the probation period. *Id.* ¶ 44. Apostol was surprised to learn during the conversation that Mustafa told the union representative that he believed he needed additional training. *Id*. ¶ 45. As a result, Apostol took steps to assess the training that Mustafa had received, and concluded that senior staff at the Des Plaines Office had spent significant amounts of time training him. *Id*. ¶ 46. Apostol also arranged for Mustafa to

receive additional training at PTAB's Springfield Office during the week of August 22, 2011, in order to make sure he fully understood all processes, systems, duties, and responsibilities that were expected of him in his position. *Id.* ¶¶ 47-48. However, the Springfield training sessions did not go well, and Mustafa received negative feedback for his performance there and upon his return to the Des Plaines office. *Id*. ¶¶ 49-53.

On August 16, 2011, the day after Mustafa received notice that his probation period had been extended, he filed a charge of discrimination against PTAB with the Illinois Department of Human Rights (the "IDHR"). He indicated his reason for filing was "because I was not certified as an employee on the 15th." *Id*. ¶¶ 34-35. Mustafa's charge of discrimination was based on race and religion and claimed a "Denial of Training" from February 15, 2011, through August 16, 2011; "Unequal Terms and Conditions of Employment" on June 11, 2011, when Apostol relocated his office; "Harassment" on June 23, 2011, when Apostol asked him to "keep the noise level down" and the "hallway door closed"; and "Probation Extended" on August 15, 2011. *Id*. ¶ 36. However, Plaintiff never complained to anyone at PTAB regarding any of these issues, nor did he tell anyone at PTAB that he had filed the charge. *Id*. ¶¶ 37-38. Moreover, Mustafa testified at his deposition that he does not recall ever disclosing to anyone at PTAB that he was Muslim, and was never told by anyone at PTAB that his probation was extended because he was African-American or Muslim. *Id*. ¶¶ 40-42. On September 6, 2011, PTAB received notice that Mustafa had filed the IDHR charge. *Id*. ¶ 43.

A few days later, on September 9, 2011, Waggoner solicited feedback from staff who had trained Mustafa and reviewed his work. *Id*. ¶ 55. Staff members responded negatively, expressing doubts about Mustafa's ability to handle the position and to be a congenial member of the staff. *Id*. ¶¶ 56-59. Mustafa's next performance appraisal, which was provided to him on or

7

about October 3, 2011, was based largely upon this feedback. *Id.* ¶¶ 60-61. Despite this feedback, however, Mustafa's performance did not improve. *Id.* ¶ 65.

Mustafa eventually received notice by letter dated November 2, 2011, that he would be discharged from his employment with PTAB. *Id.* ¶ 66. The November 2 letter stated that Mustafa was being discharged for "job performance issues and failure to include and adequately explain former work related information on [his] CMS application." *Id.* ¶ 67. No one at PTAB ever told Mustafa that he was being discharged for any other reason, including due to his race or religion. *Id.* ¶¶ 69-70. However, Mustafa subsequently filed a second charge of discrimination against PTAB alleging that he had been discriminated against based on his race and religion, and alleging retaliation for his prior charge of discrimination. *Id.* ¶ 71.

## Legal Standard

Summary judgment is proper in cases where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmovant must then set forth specific facts demonstrating that there are disputed material facts that must be decided at trial. *Id.* at 321-22.

## Analysis

**I.  Title VII Discrimination**

Here, Mustafa asserts claims for race and religious discrimination pursuant to Title VII 42 U.S.C. § 2000e *et seq.*, and for retaliation pursuant to 42 U.S.C. § 2000e-3(a). Title VII precludes employers from "discriminat[ing] against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). A Title VII plaintiff seeking to defeat a summary judgment motion must present either (1) direct or circumstantial evidence of discrimination (the "direct method") or (2) indirect evidence that establishes a *prima facie* case and satisfies the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801–02 (1973) (the "indirect method"). *See Caskey v. Colgate–Palmolive Co.,* 535 F.3d 585, 591–92 (7th Cir. 2008).

The direct method and indirect method of proof intersect in a number of ways. For example, where a plaintiff can show the existence of similarly situated comparators who did not experience a similar adverse employment action, such evidence can both serve as circumstantial evidence of discrimination under the direct approach and satisfy one of the *prima facie* elements under the indirect approach. *See Chaib v. Ind.*, 744 F.3d 974, 981-82 (7th Cir. 2014); *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) (valid comparator evidence may be used to "demonstrate pretext"). Accordingly, a plaintiff's failure to provide evidence of relevant comparators curtails a plaintiff's ability to rely upon the direct approach (particularly where the record is devoid of any other discriminatory evidence) and dooms his efforts to use the indirect approach. Often, evidence related to pretext also arises under both methods. For example, circumstantial evidence from which a reasonable jury can find that an employer's purportedly legitimate reason for the adverse employment action was pretext could constitute circumstantial evidence of discriminatory animus. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010). At the same time, under the indirect approach, once a plaintiff establishes a *prima facie* case and the employer offers a purportedly nondiscriminatory reason for the adverse employment

action, a plaintiff can then rely upon similar facts to show that the stated reason was pretext. *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014).

Recently, Chief Judge Diane P. Wood of the U.S. Court of Appeals for the Seventh Circuit in a concurring opinion, which (rather unusually) was joined by the other two judges of the three-judge panel, discussed the knotted relationship between the direct and indirect methods of proof in discrimination cases, noting "it seems to me that the time has come to collapse all these tests into one." *Coleman*, 667 F.3d at 863 (Wood, C.J., concurring); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) ("the very complexity of the dance between the interdependent steps of the indirect proof method supports Chief Judge Wood's suggestion in her concurrence in *Coleman* that it is time to collapse the different methods of proof into one test"). The Seventh Circuit has not gone so far as to make this the rule yet, but the facts and issues in this case lend themselves to a discussion focused primarily upon Mustafa's attempts to establish that he was meeting PTAB's legitimate expectations and that PTAB terminated him for a pretextual reason. The other elements of the direct and indirect methods will be addressed as necessary.[4]

Under the indirect method, a plaintiff must use the burden-shifting approach set forth in *McDonnell Douglas*, 411 U.S. at 801-02. *See McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). *McDonnell Douglas* requires a plaintiff to establish a *prima facie* case of discriminatory termination through a showing that: (1) he is a member of a protected class; (2) he was performing well enough to meet his employer's legitimate expectations; (3) he suffered

---

[4] PTAB argues that Mustafa concedes that he must proceed under the indirect method. While the Court agrees that Mustafa's response brief focuses heavily on the elements of the indirect test, it also will address the direct test because it is not wholly apparent that Mustafa has waived his right to proceed under the direct test.

an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably. *Id.* All four prongs must be satisfied for a plaintiff to prevail. *Id.*

Once a plaintiff makes this *prima facie* showing by meeting all four prongs of the test, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). If a defendant articulates such a reason, the burden of production shifts back to the plaintiff to show that the stated reason is pretextual. *See id.* In this context, a pretext is defined as "a lie, specifically a phony reason for some action." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999).

A.  **Defendant's Legitimate Expectations**

Because Mustafa's status as a member of a protected class is not in dispute, the Court first addresses the question of whether his job performance met PTAB's legitimate expectations. With respect to this factor, the Court views Mustafa's "job performance through the eyes of [his] supervisors at the time of" the adverse employment actions. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008) (citing *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th. Cir. 2002)). In doing so, the Court is mindful that it should not second-guess employers' decisions by acting "as 'super-personnel' to question the wisdom or business judgment of employers. . . ." *Id.* (citing *Giannapoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)).

A review of the evidence reveals that PTAB had serious concerns about Mustafa's job performance long before his charge of discrimination was filed, and Mustafa has failed to rebut those legitimate concerns. Here, PTAB has established that prior to August 16, 2011, when Mustafa filed his first charge of discrimination: (1) Mustafa had received negative feedback from senior staff regarding his job performance, including but not limited to his writing skills

and the manner in which he developed cases, *see* Def.'s LR 56.1 Stmt. ¶¶ 20-22; (2) PTAB staff observed that Mustafa became argumentative, uncooperative and aggressive when criticized, *see id.* ¶ 23; (3) PTAB received complaints regarding his behavior from two other female employees, *see id.* ¶ 25; and (4) PTAB had advised Mustafa that his production was lower than it should be and that he needed to improve his attendance in the office. *See id.* ¶ 24. Moreover, PTAB has demonstrated that prior to the first charge of discrimination being filed, it had become aware that Mustafa had misrepresented his prior employment on his employment application, and was investigating the situation. *Id.* ¶¶ 27-28. Mustafa has failed to properly dispute these contentions. Because Mustafa does not dispute that he misrepresented his employment record when he was hired and "the record clearly supports [Defendant's] increasing displeasure with [Plaintiff's] job performance . . . [the Court is] require[d] to conclude that [Plaintiff] does not adequately show satisfactory job performance. . . ." *Gates*, 513 F.3d at 689. As a result, Mustafa cannot establish this element of the indirect test.

### B. Similarly-Situated

Even if Mustafa were able to establish that he had been meeting PTAB's legitimate expectations, his claim also fails under the similarly-situated prong of the indirect test because he has not identified a similarly situated employee outside of his protected class(es) who behaved similarly but was treated more favorably than Mustafa. Indeed, Mustafa's submissions in opposition to summary judgment are devoid of any mention of any other similarly-situated employees working at PTAB, let alone any who were treated more favorably than Mustafa despite engaging in similar conduct. The only potential argument on this issue that the Court can divine from Mustafa's submission is a brief mention that the State of Illinois Property State Appeal Board Affirmative Action Report FY 14 Workforce Analysis, Region 1, indicates that

"the PTAB employed someone else to do plaintiffs [sic] work after termination." Pls.' Ex. 6. Relying on the case of *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 846 (7th Cir. 2007), Mustafa argues that the mere fact that his position was filled after termination is sufficient to meet his burden as to the similarly-situated element. But this is incorrect.

As the Seventh Circuit explained, *Pantoja* did indeed hold that where an employee demonstrates at the summary judgment stage that he is meeting the employer's legitimate expectations, "'the fact that the employer needs to find another person to perform that job after the employee is gone raises the same inference of discrimination that the continuation of a search does in the hiring situation.'" *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600-601 (7th Cir. 2010) (quoting *Pantoja*, 495 F.3d at 846). However, as *Naik* clarified, the application of this more lenient standard is expressly conditioned on a demonstration that the plaintiff was meeting the defendant's legitimate expectations at the time of the adverse employment action. "Naik's claim would only work if he had met BIPI's legitimate expectations. But on that score, he came up short. His claims therefore fall outside the more relaxed requirement we mentioned in *Pantoja*." *Id*. at 601.

Likewise, here, Mustafa has fallen short of meeting his burden of demonstrating that he was meeting PTAB's legitimate expectations. Thus, he was required to identify potential comparators in order to meet his burden under the indirect method. Mustafa's failure to identify any potential comparators also dooms his case under the indirect method. *See Chaib*, 744 F.3d at 784 ("[W]ithout similarly situated comparators, no inference of discrimination arises and [Plaintiff's] disparate treatment claims fail under the indirect method.").

### C. Pretext

Even though Mustafa's discrimination claim fails under the indirect test, if he can present some circumstantial evidence that would indicate that he was terminated for a pretextual reason, he still may survive PTAB's motion for summary judgment under the direct method. In order to demonstrate pretext, a plaintiff must "present sufficient evidence that the proffered reasons for the termination had no basis in fact, that they did not actually motivate [the employer's] decision, or that they were insufficient to motivate the decision." *Lesch v. Crown, Cork & Seal Co.*, 282 F.3d 467, 473 (7th Cir. 2002). Mustafa has not met this burden.

As discussed above, Mustafa has failed to properly controvert the PTAB's evidence of his continuing performance problems, the complaints brought by his co-workers against him, and his failure to accurately disclose prior employment on his application. Instead, Mustafa repeatedly asserts that members of PTAB's senior staff were "intentionally discriminatory," without providing any evidence to substantiate this allegation. Mere speculation is insufficient to support a finding of pretext so as to defeat summary judgment. *See*, *e.g.*, *Cowan v. Glenbrook Sec. Servs.*, 123 F.3d 438, 444-45 (7th Cir. 1997) (plaintiff with established record of tardiness could not defeat motion for summary judgment based solely upon inference that termination was due to racial animus rather than habitual lateness); *Cliff v. Bd. of Sch. Comm'rs of Indianapolis*, 42 F.3d 403, 412 (7th Cir. 1994) (conclusory assertions of discrimination insufficient to defeat summary judgment motion where employer presented evidence of numerous poor performance evaluations).

Finally, "[w]here an employer offers multiple independently sufficient justifications for an adverse employment action, the plaintiff-employee must cast doubt on each of them." *Lesch*, 282 F.3d at 473. Here, PTAB has presented evidence that Mustafa was terminated due to: (1)

his failure to perform the job adequately during either probationary period; (2) the concerns regarding his office demeanor; and (3) the inconsistencies on his employment application. Mustafa's wholesale failure to controvert each and every one of these bases for termination dooms his claim of pretext.

## II. Retaliation Claim

Finally, Mustafa claims PTAB retaliated against him for filing the discrimination charge. The standard for establishing retaliation pursuant to Title VII is "lower than that required for a discrimination claim; a plaintiff must only show that the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination. *Chaib* at 986-87 (citing *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted)). "Even with that lower standard, 'petty slights, minor annoyances, and simple lack of good manners' do not suffice." *Id*. (quotations omitted). "However, the Supreme Court has recently provided that 'Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test' applicable to gender or national origin discrimination claims." *Id*. at 987 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, -- U.S. --, 133 S. Ct. 2517, 2533 (2013)). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. (quotations omitted).

There are numerous incidents in the record that could colorably give rise to a retaliation claim. Mustafa primarily discusses these incidents as part of his argument that he suffered numerous adverse employment actions, but they also can be considered as supportive of his retaliation claim. On reply, PTAB points out that much of the alleged retaliation took place prior to the time Mustafa filed his IDHR charge.

A.      **Incidents Predating Mustafa's IDHR Charge**

Mustafa identifies several potentially retaliatory incidents that pre-date the filing of his IDHR charge on August 16, 2011, including:  (1) that he was denied training because the training he was offered was not applicable to his position; (2) that his office was moved to "intentionally segregate" him; (3) that Apostol wrongly asked him to keep the noise down and his door closed; (4) complaints by his female coworkers that were designed to create an adverse employment action; and (5) the extension of his probation period.  PTAB responds that these incidents cannot provide the basis for a retaliation claim because they took place before PTAB became aware Mustafa had filed his IDHR charge.  The Court agrees.  As the Seventh Circuit explained in *Durkin v. City of Chi.*, 341 F.3d 606, 614-15 (7th Cir. 2003), "it is axiomatic that a plaintiff [must] engage in statutorily protected activity before an employer can retaliate against [him] for engaging in statutorily protected activity. . . .An employer cannot retaliate if there is nothing for it to retaliate against."  *See also Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 354 (7th Cir. 2009) (same).  As a result, these incidents do not provide a basis for a retaliation claim.

B.      **Mustafa's Second Negative Evaluation and Discharge**

Mustafa's retaliation claim, to the extent it survives, must be based upon conduct occurring after the date that he filed his IDHR charge.  Although PTAB states that it did not receive notice of the charge until September 6, 2011, the Court construes the evidence in the light most favorable to Mustafa and therefore will consider any acts that took place after August 16, 2011.

PTAB argues that Mustafa's subsequent negative evaluation and eventual discharge were causally related to the events predating his IDHR charge, and that Mustafa's retaliation claims must fail because he cannot demonstrate a causal link between these actions and the filing of his

IDHR charge. Mustafa responds that the timing of the second negative evaluation and his discharge was closely related to the filing of his IDHR charge, and that this suspicious timing provides the requisite causal connection. But, temporal proximity alone is insufficient to preclude summary judgment without other evidentiary support. *See*, *e.g.*, *Harper v. C.R. England, Inc.*, 687 F.3d 297, 308 (7th Cir. 2012) ("[i]t is well established that 'mere temporal proximity between [the statutorily protected activity] and the action alleged to have been taken in retaliation for that [activity] will rarely be sufficient in and of itself to create a triable issue.'" (quoting *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)). Instead, a plaintiff must cite "other facts" sufficient to create "an inference of a causal connection" in order to withstand a summary judgment motion. *Id.* (quoting *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772 (7th Cir. 2008). Mustafa has failed to do so.

As discussed above, Mustafa has offered no evidence of similarly-situated employees being treated differently by PTAB and has failed to demonstrate that he was meeting PTAB's legitimate expectations. Nor has he offered any evidence to support a finding of pretext. On the other hand, the record is clear that PTAB had serious issues with Mustafa's job performance and office demeanor that were well-documented prior to the filing of his IDHR charge, and which culminated in the extension of his probationary period. The case of *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895 (7th Cir. 2005), is instructive. In *Moser*, the Seventh Circuit granted summary judgment to defendant on a retaliation claim under both the direct and indirect method. With respect to the direct method, the court held that because the record contained "numerous incidents" which "brought Ms. Moser's professionalism and ability to serve as an affirmative action coordinator into question," it did "not suggest a causal link between Ms. Moser's reassignment and her protected expression." *Id.* at 905. Moreover, like Mustafa, Moser's claim

17

also failed under the indirect method because she failed to supply any evidence of a similarly-situated employee or that she was meeting her employer's legitimate expectations. *Id.*

In addition, Mustafa has not demonstrated a "ratcheting up of the harassment" after PTAB discovered that he had filed his IDHR charge. *See Johnson v. Nordstrom, Inc*., 260 F.3d 727, 735 (7th Cir. 2001) (quotations omitted). Here, the investigation into his alleged misstatements on his employment application had been initiated prior to the date he filed his IDHR charge and continued past that time; his probationary period was extended one day prior to the date he filed his charge and naturally extended well beyond; and the subsequent additional training, performance evaluations, and his eventual termination were natural consequences of his prior and continued difficulties in performing his job. Mustafa simply presents no evidence that any of these events were causally linked to the filing of his IDHR charge. As a result, summary judgment is appropriate as to Mustafa's retaliation claim.

## Conclusion

For the reasons set forth above, Defendant the State of Illinois Property Tax Appeal Board's Motion for Summary Judgment [77] is granted. Judgment is entered in Defendant's favor as to all claims. Civil case terminated.

**SO ORDERED**                    **ENTER:**    9/17/14

                                                         **JOHN Z. LEE**
                                                         **U.S. District Judge**